May it please the court. Carol Hartzler for petitioner Jesus Padilla-Martinez. This case addresses the question of whether the BIA erred by giving the government three bites at the apple to meet its burden to show that a long-term lawful permanent resident is deportable. During Mr. Padilla-Martinez's removal proceedings, the Board of Immigration Appeals remanded three times, each of which prejudiced Mr. Martinez, and fundamentally Council, Judge Gould with a question for you. Yes, Your Honor. I have some trouble with the whole concept of saying that the government is only allowed one bite at the apple, that an administrative agency can't give it two bites or three. And I think that we discussed that principle in a decision I wrote called Soto Alarte. I don't know if you're familiar with it. It dealt with a different issue, slightly different, as to whether, when an adverse credibility determination was rejected by the circuit, it had to deem as true everything that was said by the immigrant, or whether it could remand on an open record. And so I'm letting you know at the outset that I have some skepticism whether the whole concept of one bite at an apple works with an administrative agency. I would refer, Your Honor, to the BIA's decision itself, the BIA's own decision in matter of MD. And that's a 2007 case in which it says that in a case where the BIA has remanded to the immigration judge, the immigration judge has authority to consider additional evidence if it is material. It was not previously available and could not have been discovered or presented at the former hearing. And in this case, the government has given us absolutely no reason why those conditions were not shown. In fact, I believe Judge Smith, in a decision that you authored earlier this year in Oyenaran, I believe, that was a situation where this court specifically considered when is evidence previously available. And what the court found is that it was reasonably available to the party. If it was reasonably available, then on remand, you're not allowed to consider it unless they can prove some reason why it wasn't available. In Oyenaran, it was a situation where the person was detained in Texas, and there was an arrest warrant in Nigeria. But in other cases by this court, for instance, in Ramon Sepulveda, this court held that the government had not shown that a Mexican birth certificate that it was not previously available. In this case, the documents that we're looking at are very, very easy documents to get. It's a transcript from the California court, and it's a single declaration from one of ICE's own employees in its own building who pulled the transmission out of the fax machine. All he had to do was write a one-page declaration. There's no reason that the government has ever given that this was not previously available. That's what they ultimately did after the hearing here or the decision, but I'm even concerned about whether the transcription, the attestation by the government official was sufficient, because 8 CFR 287.6 says that an official record requires that the copy be attested by the official having legal custody of the record or an authorized deputy. I've always understood that to be, like, for example, if you have a birth certificate, you ask for a certified copy of the birth certificate. And like in California, it's usually the clerk of the county would be an official certification. Or in a criminal court, it would be the clerk of the court that handles those. Isn't that what this regulation is talking about? I certainly share your concern, Judge Smith. I think that there's a lot of issues in this case about whether this certification was proper. And in looking at that, we have to look at, I believe, it's 8 USC 1229A C3C. And there's two requirements. One is the one that you mentioned, and then the other is whether the transcript was certified by the California state court reporter. So really here you have, number one, was it certified by the proper person? And secondly, of course, could the authority have had that before it, before it made a decision, with any kind of reasonable effort? Correct. And in this case, the immigration judge actually found that neither of those were met. And instead of going along with the immigration judge, the BIA instead essentially allowed the government to appeal this decision, even though it had waived appeal. It's a little bit like somebody being able to supplement a factual record before our court that never showed up in the district court or any lower court. Exactly, Your Honor. Exactly, Your Honor. So I would concede, or I would answer any question in response to your question, Judge Gould. I think there could be situations where, for instance, there would be a remand. And then if it was proven that the evidence was not previously available, then certainly, yes, it could be considered. But you still need to the BIA has said numerous times, and this Court has said numerous times, that we're going to construe that rule very strictly. We're not just going to give the agency the opportunity to remand over and over and over. And while you may believe that the agency, maybe there should be slightly looser rules for that, I think this case is a perfect example of what happens when they have those kinds of loose standards. You have a person who is detained for two and a half years at taxpayer expense, and the government just doesn't get its act together to submit any documents on time, even though they had a – certainly had the ability to do so. I would – I would then move on to my next point, Your Honors. One of the other things I would like to discuss is the BIA's – as I mentioned, the BIA's decision that it would construe the government's appeal of the immigration judge's underlying decision as an appeal of the motion to reopen. And I think the easiest way to do that would be to refer the Court to 209 of the administrative record. This is the page that shows the front page of the notice of appeal that the government submitted. On that page, they clearly state that they are – they are appealing the immigration judge's July 7 decision. And on that box, it says that if you want to appeal more than one decision, you must use more than one notice of appeal. They didn't do that. Instead, what they did is they clearly stated, we are appealing the immigration judge's underlying decision. They attached a copy of that decision. But then the BIA took that and construed it and said, no, we believe that we're going to let them, in the course of that appeal, appeal an entirely separate issue that they had already waived. And this Court in De Santi Mochese clearly held that that's not proper. In other words, the Court said that if the BIA has the opportunity to adjudicate a motion to reopen and an underlying order of the immigration judge, you can't use the decision in one to correct an error in the other. But this one, I have a little bit of the opposite problem than we had before. In the case we talked about before, you have an essential document that bears very significantly here, and the truth of it is very important. So you go to the original source. On the other hand, on this issue, it seems to be whether there's surprise, whether you have notice and the like. And the – when you look at the notice of appeal the government filed starting on the first page, it indicated it was appealing the IJ's July 7, 2010 termination order, but under the heading issue presented, they raised the issue of the IJ August 5, 2010 order. Why isn't that – admittedly, they didn't check the right box. I get that. But why isn't that sufficient, since it clearly put you on notice as to what they were talking about? I get your other one. That's different. But on this issue, why are you prejudiced in any way? Because, Your Honor, it's not necessarily just about notice. It's about following the regulations. And the regulations clearly state that you can't – you can't mash those together. And by doing so, by simply putting someone on notice, you're not necessarily giving the – them the opportunity to know exactly what issues to argue. In other words, if we had come back and if we had argued that as well, would we have been implicitly waiving the BIA's – or, I'm sorry, the government's waiver? So I think that that's a concern to think about, too, is by acknowledging that they have brought this up, and if we respond to it, are we somehow implicitly blessing their failure to follow their own regulations? So I think that that's an issue of concern. But you're not contending that the guy was not convicted. We – we would not contest that he was convicted. We would contest that – And the only thing you're contesting, who I understand, is the underlying facts. We are contesting whether the government submitted sufficient proof to – Well, are you contesting the underlying facts of the – are you contesting the underlying facts? We are contesting that the government met its burden with evidence. I didn't ask you that. I'll go back to, are you contesting the underlying facts? We are, Your Honor. You are? We are. Oh. You're saying that that's not what happened. My guy didn't plead guilty to that. We are contesting that he pleaded guilty to an offense that is removable under the statute. We're not contesting that he was convicted of something. We're contesting that he was convicted of an offense that would meet the generic definition of an aggravated felony. Mm-hmm. I believe I'll save the rest of my time for rebuttal. Very well. Let's hear from the government, then. Oops. Ms. Paras-Gondola, is that the way you said it? Yes, just like it's spelled. Okay. Christina Paras-Gondola for the Attorney General. May it please the Court. Mr. Padilla is removable because he possessed methamphetamine for sale and pled guilty to that and was convicted of that offense as charged. He is not contended otherwise. He is not eligible for any form of relief, removability. Excuse me one second, since obviously everything stems off of that. The government has the burden to show that that's what happened, right, in terms of his conviction? Yes, Your Honor. And let's just say we were dealing with a sentencing guideline issue or something of that nature. Under the modified categorical analysis, we have to look at certain documents. Yes. If we accepted a document that was not certified by the proper authority, every defense lawyer in the country would be screaming, and appropriately so, because we don't just rely upon something that somebody says this is where, I talk to these people on the phone and this is what it is. We look for an official document that shows. This is, in my view, very much like that. You have, it's not so much the question of whether what happened before, or whether the government has proven what happened based upon the records that are admissible and the way in which it's admissible under the regulations. That's what troubles me. I'm hoping that you can help me with that before we get to what happens if he did do this. Yes, Your Honor. Well, first and foremost, the federal rules of evidence do not apply in immigration proceedings. But the Code of Federal Regulations does, and that's what I'm concerned about. I quoted the one part of the section to your counterpart on the other side, and I don't see how it was satisfied. Can you correct me? How in was that satisfied? Your Honor, I don't believe that that is mandatory, that the section 287.6. Do you have any authority for that? Or that harmless error applies or something of that nature? Well, of course, I think this, the proceedings here, I think we can all acknowledge are full of harmless errors. And, Your Honor, you would be able to correct me if I'm wrong. Sometimes they are, sometimes they aren't. So 8 CFR section 1003.41a4b and 8 CFR 287.6a are the ones we're talking about. Yes, Your Honor. And if I understand your position, you're saying it doesn't matter whether the government complies with these regulations for purposes of proving, in this case, what this guy's crime was. No, but let's take the first regulation, 1003.41. That sets a maximum. And I think there's a case on point that this court has already decided, Cenotes Cruz. And this is, the regulation replicates the statute. And it just says that there must be a certification from the state official and a certification from the service. And if those two documents are in the record, then the record of conviction shall be admissible, which means at that point it's mandatory. So the certification, at least as the government construes it, is, let's just say that somebody was convicted in 1980. And at that time, a court reporter that took down the transcript certified that this was an accurate transcription. Does that meet the requirement from the government's perspective? Or do you need to have someone with possession of that record certify that that is a true copy of what it has? Your Honor, I would argue that the first scenario would be acceptable and admissible because there is a certification that the document is what it purports to be. And that's the important issue here. But you might have, again, I don't mean to sound conspiratorial here, but let's say it's a 40-page document. And the guts of it is, you know, on pages 15 through 30. And somebody changes that. That's hard to do these days, is it, with computers and Photoshop and all that sort of thing? That's why we have certifications, so that we can make certain that a document is what it purports to be. Yes, Your Honor. Well, I believe that that is not even an issue in this case, this scenario that you've described. So it's a no. Nobody said that there was falsification. I'm just simply saying what did happen here, as I understand it, is that the IJ said the government did not produce this in a timely basis. Therefore, we don't consider it. Therefore, it's as if they don't prove it. The BIA said, no, we got this later deal. And I figure it was ICE or whoever certified it based on telephone call. And that's OK. So we're going to send it back. That's what we're really dealing with here, is it not? On this one particular point. Your Honor, I guess, as I understand it, the question has changed a little bit. Is the problem here in the timeliness of the department? Well, that's the second part. The first part is what they got. What they got. Well, eventually, after they got it, they did receive the certification from, well, first of all, initially, when the department produced the transcript of the plea colloquy on July 19, 2010, it was certified by the court reporter. As a contemporaneous certification of the document at the time it was originally produced, but not as of the time that it was requested, right? Right. And I think the Department of Homeland Security was mistaken when it represented to the immigration judge that it didn't have the certified copy, when, in fact, all it was waiting for was one of its own people, someone from ICE, to also certify that it was the copy that he received directly from the court. But you do agree, I gather, that it is a condition predicate to find the conviction that somebody certified. We may have a different view as to who needs to certify it, but somebody has to, right? Your Honor, yes. According to regulation. Yes, under, well, actually, the regulation's pretty broad. And it's just, isn't it, isn't counsel, if I could ask a question that relates to Judge Smith's question, isn't there a presumption of administrative regularity so that if an official of ICE certifies it, that that should be sufficient under the regulation and we wouldn't make a collateral inquiry as to whether that particular ICE official had enough information? Yes, Judge Gold, that's correct, that that presumption exists. Well, that would certainly be true for a document that the ICE official had. But the regulation referring specifically to 287.6a says that the official record should be evidenced by a copy attested by the official having legal custody of the record or by an authorized deputy. Well, what record are we talking about? We're talking about the transcript of a plea hearing. That's not an ICE document. That's a document from a civil, I mean, from a criminal court. They're the ones that have the possession of the record, not ICE, right? Yes. And ICE can't really certify that it has legal custody of that document, can it? That's correct. Okay. So that's why I have a problem. Now, whether there's harmless error, I'd appreciate your addressing that. Is there any case law that backs that up? There's harmless error if a document is ---- You don't have a certified document to evidence, in this case, a previous criminal conviction, which is the whole basis of your being able to take the action that you would like to against this particular person. And, Your Honor, if I understand you, the issue is that it wasn't certified by a custodian of records. Right. And, again, that is acceptable, because this regulation in 1003.41 is a maximum. It just says it's mandatory once it has, you know, the certification that you discussed, plus the ICE certification. That doesn't mean that the immigration judge can't accept something that doesn't quite meet that. Do you have a case law on that? The Cenotes Cruz case. Do you think that answers that question? It answers the question to the extent that, again, it says that Section 1229A.C.3 of the statute is a maximum, and that the immigration courts have the discretion to admit something that satisfies a lower standard than that. Okay. I appreciate your perspective. I'll take a look at that. So the other point is that Mr. Padilla's protracted removal proceedings had no bearing on whether he was removable. Indeed, he could have brought a habeas petition for relief if he thought he was locked up too long. And part of the delay was caused by his appeals. The other issue is that if Mr. Padilla believed that the Board could not remand on an open record, it should have objected by filing a motion to reconsider before the Board to either reconsider or amend or modify its decision. Well, if there are no further questions, I'll conclude. In all respects here, the Board followed the law. Mr. Padilla was accorded full due process, and he had numerous opportunities to present his case. To the extent that the Mr. Padilla is making a parity argument here, what's good for the goose is good for the gander, the Congress did not draft the immigration statute that way. Again, there's no dispute that Mr. Padilla is removable, and despite the Department of Homeland Security's mistakes, they do not provide him a free pass to remain in the United States. Very good. Thank you. Do you have a few moments for rebuttal? Just a few brief points. First of all, in Cenotes Cruz, we would acknowledge that Cenotes Cruz interpreted the statute, and I'm talking here about 1229AC3C. There are those two subsections, and in Cenotes Cruz, the Court held that both of those did not have to be satisfied. I would question that, because as part of the statute itself, I believe that the Court's decision reading one of those subsections out is subverting the intent of Congress as Congress chose to codify the statute. But it's still precedent. I understand, Your Honor. Even assuming that Cenotes Cruz controls here, Cenotes Cruz still held that you had to satisfy one of those. And in this case, the government hasn't satisfied either. And the IJ found that specifically, and she held that she specifically considered Cenotes Cruz and found that even though Cenotes Cruz held this, I find that the government's proffer here has not met the minimum standard. So for those reasons, we don't believe that Cenotes Cruz would control this. I would also like to address the government's argument that Mr. Padilla Martinez's delay was caused by his own appeals. It is very troubling to me that the government would believe that anyone who asserts their own judicial right to appeal is somehow to be blamed for causing the delay. I think that's inappropriate, frankly. I would also state that in the government's statement that he could have filed a habeas petition, that comes as news to me since the government has long challenged the idea that a person who's still in front of the IJ would not be subject to mandatory detention at this point. In regards, lastly, to the issue of harmless error, I would proffer to this Court that essentially this is a situation where if the Court finds harmless error, it's essentially allowing the government to do this as much as it wants. And that harmless error will result in the government being able to circumvent the regulations and circumvent the statute. Even if you don't say, well, this is harmless error, maybe they shouldn't have done this or they still would have found him removable, the fact is that you're essentially reading Congress's language out of the statute. And I don't see how that could ever be harmless error. Thank you. Thank you very much. Thank you both for your fine arguments. The case of Padilla Martinez v. Holder is submitted.
judges: Duffy, Gould, Smith